IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS WESTERN DISTRICT

| | | |
|---|---|---|
| NIPPONKOA INSURANCE CO., Ltd., | ) | |
| Plaintiff, | ) | Case No: 11 c 50205 |
| | ) | |
| v. | ) | Hon. Frederick J. Kapala, |
| | ) | U.S. District Court Judge |
| NDK CRYSTAL, INC., et al., | ) | |
| Defendants. | ) | Hon. P. Michael Mahoney, |
| | ) | U.S. Magistrate Judge |

## ORDER

Defendant's Motion to Strike [95] is granted in part and denied in part. See "STATEMENT" below for details.

Date: Nov 26, 2013

_____
Hon. P. Michael Mahoney,
U.S. Magistrate Judge

## STATEMENT

Nipponkoa Insurance ("Plaintiff") has filed a declaratory action suit against NDK ("Defendant"), following an explosion of Defendant's pressurized "autoclave" tank in December 2009. After the explosion, Defendant made an insurance claim to cover the resulting damage and Plaintiff ultimately seeks judgment that its insurance policy does not cover the loss.

During the discovery process, Defendant deposed Mr. Raymond Quiett, Plaintiff's lead underwriter on the Defendant's insurance account. Under oath, Mr. Quiett was asked numerous

1

questions concerning his representations to Defendant and other relevant issues. After the deposition was concluded, Plaintiff submitted an errata sheet making twenty-two changes to the answers given by Mr. Quiett. Now, Defendant objects to those errata-sheet changes and has filed a motion to strike the modifications, claiming that many of the changes in the errata sheet improperly and directly contradict Mr. Quiett's original deposition answers. Plaintiff insists that the errata-sheet changes comply with Rule 30(e)(B) Federal Rules of Civil Procedure.

Rule 30(e)(B) permits deponents to review the deposition transcript and make any "changes in form or substance" if the deponent signs "a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(B). Although the rule is seemingly straightforward and concise, many courts are still divided as far as the scope and nature of the changes permitted by Rule 30(e) are concerned. *See* 7 James Wm. Moore et al, *Moore's Federal Practice*, ¶ 30.60 (3d ed. 2013).

Here in the Northern District of Illinois, Judge Will set the original standard of deposition errata changes in *Lugtig v. Thomas*, holding that even if the written changes contradict the original deposition, they would be allowed under Rule 30(e). *Lugtig v. Thomas*, 89 F.R.D. 639 (N.D. Ill. 1981). Judge Will reasoned that it was better to allow the witness to change his testimony early on when signing the deposition, rather than waiting until trial to reveal any changes. *Id.* at 641. Certainly, if a party is able make changes to their testimony during discovery, the opposing party would be on notice of the deviations and could seek discovery on the changed testimony. Notably, the court in *Lugtig* also stressed that the unambiguous language of Rule 30(e) allows changes to "form and substance" and declines to place *any* limit on the nature of the changes themselves. *Id.*

Judge Will held that the original deposition testimony would remain part of the record and could be used to impeach the witness. *Id.* This would place the witness in the same situation as if he had changed his testimony at trial. Further, the deposition could be reopened and the witness be asked any necessary follow up questions. The costs, including attorneys' fees reasonably necessary to reconvene the deposition would be borne by the party making the changes.

Judge Will's reasoning in *Lugtig* was followed in this district for nearly twenty years. *See Sanford v. CBS, Inc.*, 594 F. Supp. 713, 715 (N.D. Ill. 1984); *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F. Supp. 1398, 1406 (N.D. Ill.1993). However, in 2000 the Seventh Circuit decided *Thorn v. Sundstrand* and Chief Judge Posner discussed a different interpretation of Rule 30(e). *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).

Coincidentally, *Thorn* originated out of the Northern Illinois Western Division and this Magistrate Judge handled all discovery issues. In that case, the attorney for the defendant submitted an errata sheet for a crucial defense witness that changed the substance of the witness's testimony. There was no error in transcription reported. This Magistrate Judge allowed the errata change. Although Judge Posner agreed that the change was permitted by Rule 30(e), by analogy to cases ruling that a separate affidavit *may not* be used to contradict a witness deposition to defeat a Rule 56 Motion, he held that an errata change of substance that contradicts the transcript is impermissible unless it corrects an error in transcription. *Id.* In short, he found that a change of testimony, even substantive supplementation and explanation, is allowed under the Rule, but contradiction is not. *Id.*

Generally speaking, there are three instances in the litigation process when a witness has

an opportunity to change his or her testimony: (1) in an errata sheet submitted directly after a deposition is taken, (2) in an affidavit to defeat a Rule 56 motion for summary judgment, and (3) during testimony at trial.

As far as the first instance is concerned, deposition changes are covered by the Federal Rule of Civil Procedure 30(e). As summarized above, Judge Posner accepted that the Rule allows a deponent to change "from what he said to what he meant," but the changes could not actually contradict the original answers, unless correcting a transcription error. *Id.* As Judge Will pointed out in 1981, the plain language of the Rule allows any change; the only explicit limitation is that the errata sheet must state reasons for the change.

The second instance where a witness may change its testimony, dealing with a Rule 56 motion, is not governed by any specific Federal Rule of Civil Procedure. Yet, the Seventh Circuit has consistently held that a subsequent affidavit may not be used to contradict a witness's deposition to defeat a Rule 56 Motion for Summary Judgment (these are the cases cited by Judge Posner in *Thorn* by analogy to disallow actual contradictions).

The third instance where witnesses may change their testimony is during examination at trial. This is a too-common occurrence and nothing in the Federal Rules of Civil Procedure or the Federal Rules of Evidence forbids a change of testimony at trial; the witness testifies and if the testimony is contradictory, the original statement is customarily used for impeachment and it is up to the finder of fact to decide which version is correct.

It is difficult for this Court to understand why witnesses are allowed to change testimony at trial yet are not able to change their testimony with an errata sheet after being deposed during

4

the discovery process. The source by analogy lies with Rule 56. Since 1985, appellate courts and the Supreme Court have encouraged trial judges to be more aggressive in granting Rule 56 motions. *See Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532–33 (7th Cir.1999); *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168–69 (7th Cir.1996); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir.1995); *Schiernbeck v. Davis*, 143 F.3d 434, 437–38 (8th Cir.1998); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997); *Sullivan v. Conway*, 157 F.3d 1092, 1096–97 (7th Cir.1998). Perhaps the only reason not to allow Rule 30(e) to be interpreted as it is written is a fear that litigants will use the errata sheets to defeat motions for summary judgment. Regardless, under *Thorn* it is now the rule in the Seventh Circuit that one cannot make any substantive change in one's deposition testimony that *actually contradicts* the original transcription *unless* it merely corrects an error in transcription. *Thorn*, 207 F.3d at 389.

Here, the parties dispute the errata changes numbered 1 through 4, 6 through 10, 12 through 15, and 17 through 22, respectively. The Court will discuss and rule upon each disputed change in order within the context of the *Thorn* rule:

1. **Question:** "Is Archway Insurance an agent or broker?"

    **Transcript Answer:** "They are an agent."

    **Plaintiff's Change:** "They are a broker."

This change is stricken as it is contradictory to the original answer.

2. **Question:** "So they work with Nipponkoa's best interest in mind, right?"

    **Transcript Answer:** "According to the definition of agent, yes, they would be working with our interest in mind."

    **Plaintiff's Change:** "According to the definition of agent, yes, they would be working with our interest in mind only insofar as their duties are stated in the limited

5

agency agreement."

This change is allowed as it supplements the original answer and does not actually contradict it.

3. **Question:** "But you already knew that from looking at the prior exhibit which was dated in July, not in August, right, of 2007?"

   **Transcript Answer:** "Yes."

   **Plaintiff's Change:** "No."

This change is stricken as it is contradictory to the original answer.

4. **Question:** "So this was not anything new that the letter represented to you, right?"

   **Transcript Answer:** "Yes."

   **Plaintiff's Change:** "No."

Although this answer appears to be contradictory, the Court will allow the change. Here, the question is vague, compound, and phrased in such a way that the original answer may reflect a simple misunderstanding of what was being asked or what portion of the question the witness intended to agree with. The Court interprets the change as a correction to what the witness "meant to say" after he carefully reviewed the question in written form.

6. **Question:** "Okay, so my question is was there a concern on the underwriters' part that if you order NDK vessels to be shut down, there will be a business interruption claim?"

   **Transcript Answer:** "I can't contradict my writing here. This is an expression of concern on my part that there may be a business interruption claim."

|  |  |  |
|---|---|---|
|  | **Plaintiff's Change:** | "I can't contradict my writing here.  This is an expression of concern on my part that there may be an action for loss of income." |

7. **Question:** "Do you recall whether hydrogen embrittlement was one of the exclusions in the 2008 policy?"

   **Transcript Answer:** "I don't believe that it is."

   **Plaintiff's Change:** "I don't believe the words 'hydrogen embrittlement' appear in the policy."

8. **Question:** "So he is Nipponkoa's agent on this, correct?"

   **Transcript Answer:** "Yes."

   **Plaintiff's Change:** "Greg Stewart is an employee of Archway Insurance, with whom we have a limited agency agreement.  Mr. Stewart is a broker."

9. **Question:** "Now, the responses that Mr. Turner has provided to these questions, were they part of the official application process by NDK?"

   **Transcript Answer:** "They are not part of the application."

   **Plaintiff's Change:** "They are not part of the application form."

These changes in questions 6, 7, 8, and 9 are allowed as they do not seem to actually contradict the witness's testimony, but to assert clarifications as to what the witness "meant to say."

10. **Question:** "So they weren't part of NDK negotiating the 2008 policy, right?"

    **Transcript Answer:** "No."

    **Plaintiff's Change:** "Yes."

As in Question 4, although this answer appears to be contradictory, the Court will allow the change. The question is vague, compound, and phrased in such a way that the original answer may reflect a misunderstanding of what was being asked or what portion of the question the witness intended to agree with. Again, the Court interprets the change as a correction to what the witness "meant to say" after he carefully reviewed the question in written form.

12. **Question:** "Is there any mention of Mr. Turner's e[-]mail representations in this document?"

    **Transcript Answer:** "There's no mention of his e[-]mail."

    **Plaintiff's Change:** "There's no specific mention of Mr. Turner's e-mail in this document, but there are references to his representations in the document."

This change is allowed as it supplements the original answer and does not actually contradict it.

13. **Question:** "Is there any mention in this document that Nipponkoa expects NDK replace the vessels during the term of the 2008 policy?"

    **Transcript Answer:** "No."

    **Plaintiff's Changes:** "The document references 'management has taken the necessary steps to assure themselves another large loss involving the autoclaves will not occur.'

        Necessary steps include the planned lid and vessel replacement in the near future as described in the Turner e-mail."

This change is stricken as it is contradictory to the original answer.

 14. **Question:** "So in order to determine whether to insure NDK and how much to charge NDK, the issue of whether the vessels would be replaced during the policy term or not is not mentioned?"

    **Transcript Answer:** "It is not mentioned in this document."

    **Plaintiff's Changes:** "It is not explicitly mentioned in this document. But the document states 'management has taken the necessary steps to assure themselves another large loss involving the autoclaves will not occur.' Necessary steps include the planned lid and vessel replacement."

This change is allowed as it supplements the original answer and does not actually contradict it.

 15. **Question:** "If you viewed those emails as material to your decision to provide insurance, you don't think this is something that you would have included in the CURE form?"

    **Transcript Answer:** "Well, it would have been a good idea. I did not do it."

    **Plaintiff's Changes:** "I did include the statement 'management has taken the necessary steps to assure themselves another large loss involving the autoclaves will not occur.' Necessary steps include the planned lid and vessel replacement."

This change is stricken as it is contradictory to the original answer.

 17. **Question:** "You're also not aware of any representations regarding replacement of the vessels that would have been made by NDK in connection with the '09 policy renewal, correct?"

|  | **Transcript Answer:** | "Other than – no." |
|---|---|---|
|  | **Plaintiff's Changes:** | "Other than the earlier e-mail from Dave Turner, and with respect to the 2009 written application, no." |

This change is allowed as it supplements the original answer and does not actually contradict it.

| 18. | **Question:** | "Did you know that when the 2009 policy was issued, NDK was running the vessels without replacement?" |
|---|---|---|
|  | **Transcript Answer:** | "Yes, I was aware because the risk control report said so." |
|  | **Plaintiff's Changes:** | "No." |

This change is stricken as it is contradictory to the original answer.

| 19. | **Question:** | "Which is why when you were renewing the 2009 policy, you were confident that your opinions of various programs being implemented by management and vessels being sound, those opinions still held true for the 2009 renewal, right?" |
|---|---|---|
|  | **Transcript Answer:** | "They held true." |
|  | **Plaintiff's Changes:** | "They held true, except that I had no personal opinion that the vessels were sound. That information was conveyed to me by others." |

This change is allowed as it supplements the original answer and does not actually contradict it.

| 20. | **Question:** | "Do you know whether anyone from Nipponkoa ever followed up with NDK on issues raised in the warning letter?" |
|---|---|---|
|  | **Transcript Answer:** | "I'm an aware." |
|  | **Plaintiff's Changes:** | "I'm aware." |

This change is allowed as Plaintiff claims that the change was due to an error of transcription.

21. **Question:** "Did you know, at the time of the 2009 renewal, that NDK was still using old vessels and old covers?"

   **Transcript Answer:** "Yes."

   **Plaintiff's Changes:** "No."

This change is stricken as it is contradictory to the original answer.

22. **Question:** "So then your response to Mr. Ponzi's question that vessel replacement is what you were talking about here is not a true answer, because at the time you wrote this, management has taken no steps that you are aware of to replace the covers and vessels—as far as actually having taken the steps—correct?"

   **Transcript Answer:** "Correct."

   **Plaintiff's Changes:** "Not correct."

This change is stricken as it is contradictory to the original answer.

Defendant also argues that Plaintiff's listed reasons for the errata changes are insufficient. Rule 30(e) states that the deponent is "to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1)(B). However, although a court may strike a deponent's changes if no reasons are listed, courts are not to analyze the sufficiency of any listed reasoning; that is left for the trier of fact to decide at trial. *See Foutz v. Town of Vinton, Virginia*, 211 F.R.D. 293, 296 (W.D. Va. 2002); *Lugtig*, 89 F.R.D. at 641 ("The language of [Rule 30(e)] places no limitations on the type of changes that may be made by a witness before signing his deposition[,] . . . nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes"); *see also Telewizja Polska USA, Inc.*, 2004 WL 2367740, at *2 (N.D. Ill. October 15, 2004).

Here, the original deposition answers will remain as a part of the record and can be used to challenge the credibility of the deponent-witness during cross examination at trial. "The

deponent can be cross-examined about the changes and impeached by the inconsistency, with the finder of fact invited to determine that [if the] initial reaction was the honest reaction." 7 James Wm. Moore et al, *Moore's Federal Practice*, ¶ 30.60 (3d ed. 2013); *See Dunning v. Chemical Waste Management, Inc.*, 1997 WL 222891, at *7 (N.D. Ill. Apr. 22, 1997); *See also Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp 1398, 1407 (N.D. Ill.1993). Furthermore, if additional discovery is necessary, it should be brought to the court's attention.

After going through this process, the Magistrate Judge respectfully suggests that Judge Will's *Lugtig* decision be reconsidered. Defendant's motion is granted in part and denied in part.

Date:   November 26, 2013                                                                    E N T E R:


                                                                                             _____